United States District Court
Southern District of Texas
FILED

NOV 2 2 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

Colin Kelly KAUFMAN, Plaintiff, | IN CASE NO. B-02-223
v. |
Charles B. FELDMAN, Defendant | IN CHAPTER 11

Font: Korinna

PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Colin Kelly Kaufman, and for his Original Complaint, respectfully shows the Court as follows:

I. Jurisdiction, Parties, Venue.

1. Federal Question Jurisdiction. Jurisdiction in this case is predicated on the existence of a federal question. The meaning and interpretation of a federal judgment is a federal question. Local Loan Co. v. Hunt, 292 U.S. 234, at p. 239, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); Manges v. McCamish, Martin, Brown & Loeffler, P.C., 37 F.3d 221 (5th Cir. 1994); Magidson v. Duggan, 130 F.2d 473 (8th Cir. 1950); Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714 (2d Cir. 1974); Nowling v. Aero Services Intl., Inc., 734 F.Supp. 733 (ED La. 1990) (even state court causes of action take on sufficient federal character to support federal court jurisdiction when they call into question the meaning or effect of a federal court order); Southmark Props., Inc. v. Charles House Corp., 742 F.2d 862 (5th Cir. 1984); Southwest Airlines Co. v. Texas Intl. Airlines, Inc., 546 F.2d 84, at p. 90 (5th Cir. 1977), citing and following Duggs v. American Surety Co., 300 U.S. 414, 428 (1937); Seattle First Natl. Bank v. Manges, 900 F.2d 795 (5th Cir. 1990); Spanos v. Skouros Theatre Corp., 235 F.Supp. 1 (SD N.Y. 1965), aff'd 364 F.2d 161 (2d Cir. 1966) (federal question

jurisdiction over state court attempt to prosecute California attorney in state court for practicing law without a New York license, where attorney was admitted *pro haec vice* in federal court, since meaning and effect of the federal order was at issue in the case); White Farm Equip. Co. v. Kupchko, 792 F.2d 526 (5th Cir. 1986). The federal judgment is attached whose interpretation and meaning are at issue in this case. The writings are part of the record on appeal in Cases Civil # B-02-073 and 074, in this Court before Judge Hilda Tagle. The bankruptcy plan (Exhibit A) is R0162-R0202, and the First Amended Plan (Exhibit B) is R0205-0242, and the order confirming the latter (Exhibit C) is R0243-0246, all having existed in Bankruptcy Case 90-01254, United States Bankruptcy Court for the Southern District of Texas, Brownsville Division. These documents create the duty to disclose, the omission to comply with which creates the cause of action for fraud in this case.

2. District Court vs. Bankruptcy Court Jurisdiction. It is sometimes true that the question of meaning and effect of a bankruptcy plan can so be related to an on-going bankruptcy as give jurisdiction to the bankruptcy court under the general order of reference. But it more often is not a requirement that the bankruptcy court hear an issue as to the meaning and effect of a bankruptcy court plan. In re Lindsay (Lindsay v. Mbank Alamo, NA), 85 B.R. 397 (Bunton, Dist. J., adopting recommendation of R. Glen Ayers, Ch. Bkcy. J.) (WD Tex. 1989) (if the plan does not affect a particular dispute, but the dispute is purely a matter of state law, no need for bankruptcy jurisdiction).

A. Wrong Against Two Persons. Furthermore, a wrong can be committed which is in part a wrong against the creditors of the bankruptcy estate and in part a

personal wrong against someone else; in which case the action of the someone else is separate, and not subject to the automatic stay,[1] and an issue for the federal district court or a state court. South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Texas, 614 F.2d 1056 (5th Cir. 1980) (bankruptcy court had jurisdiction over trustee's claims vs. bank for wrongful set-off vs. trust account, but to the extent funds belonged to Dahl, beneficiary of the trust, he had his own, non-bankruptcy court cause of action for the same.) *See likewise*, In re Educator Group Benefit Trust (Schertz-Cibolo Ind. Sch. Dist. v. Wright), 25 F.3d 1281 (5th Cir. 1994) (held, at p. 1286, fraud claims belong solely to the party defrauded, not also to bankruptcy trustee); *see also*, In re Mortgage-America Corp. (American Natl. Bk. of Austin v. MortgageAmerica Corp.), 704 F.2d 1266, 1277 (5th Cir. 1983) (held, this was not an independent claim by a third party; and a claim to recover property allegedly conveyed away from the bankruptcy estate was vested in the trustee, and the automatic stay barred attempts by an individual creditor to recover the same); In re Medomak Canning Co. (Bezanson v. Bayside Ents., Inc.), 922 F.2d 895 (1st Cir. 1990) (power to settle equitable subordination claims was vested in bankruptcy trustee, and court's approval of that settlement was res judicata and bound all creditors); *compare*, In re Vitreous Steel Prods. Co., 911 F.2d 1223, 1230-31 (7th Cir. 1990) (creditor had standing to be heard on equitable subordination count, but lacked standing on any other count, since claims to recover property belonged to the trustee, citing Koch Refining v. Farmers Union Central Exchange, Inc., 831 F.2d 1339 (7th Cir. 1987), cert. denied 485 U.S. 906, 108 S.Ct.

---

[1] The automatic stay terminates upon confirmation of a plan, which occurred cerca 1992, so that is not at issue in the current case.

1077, 99 L.Ed.2d 237 [1988]). See also Caplin v. Marine Midland Grace Tr. Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972); followed in Rochelle v. Marine Midland Grace Tr. Co., 535 F.2d 523 (9th Cir. 1976) (individual claims of persons interested in estate vs third parties do not pass to bankruptcy trustee.)

      B. Post-Confirmation Acts as a Subsequent Tort. In any event it is clear that the rights of someone who is not bankrupt against a former bankrupt for his post-confirmation acts and omissions is not property of the bankruptcy estate, and not an occasion of bankruptcy court jurisdiction. If the general order of reference does not apply to a cause of action or complaint, then that claim continues in federal district court, unreferred to the bankruptcy court. The general order of reference in this district does not reach suits by non-bankrupts for fraud committed post-confirmation. It does not require referral of a post-confirmation fraud complaint even if made against a former bankruptcy debtor.

      C. Separate Claims. In any event, Defendant Feldman and the current plan trustee propose to settle out the bankruptcy estate's claims against Defendant Feldman, and close the case. Also, this case is for Mr. Kaufman's personal claims against Mr. Feldman and his companies, not for claims of the estate. So this case cannot have any outcome effect on the bankruptcy estate, and thereby is not sufficiently related to it to give bankruptcy court jurisdiction. Although the bankruptcy estate also has a duty to pay Mr. Kaufman, the Motion to Approve Compromise and Settlement filed by in the bankruptcy case by Mike Schmidt and John Vardeman for the replacement plan trustee, Mike Boudloche, does not propose to honor that duty insofar as Plaintiff's claims are concerned;

because the motion tries to settle out Defendant Feldman's million dollar liability for $25,000. So Plaintiff must take care of himself, and not rely on the persons administering the bankruptcy estate.

      D. <u>Jurisdiction Not Delegable to Bankruptcy Court</u>. Finally, it has been held that where there is ancillary jurisdiction over a claim, that jurisdiction exists only in the federal district court itself, and may not be delegated to the bankruptcy court. <u>In re Walker (Walker v. Cadle Co.)</u>, 51 F.3d 562 (5th Cir. 1995) (King, Cir. J.). So this case must be filed in federal district court, and not in the bankruptcy court.

    3. <u>Parties</u>. Plaintiff Colin Kelly Kaufman was formerly a plan trustee under the plan shown as Exhibit B and confirmed by Exhibit C. He is the plaintiff. Charles B. Feldman was once the debtor under the plan shown as Exhibit B and confirmed by Exhibit C. He is the chief defendant, and sometimes hereafter called Defendant Feldman. Defendants Feldman Real Estate, Inc., Feldman Rentals, and Clara Feldman Properties may be served by serving Defendant Feldman as their managing partner, and are sometimes hereafter called the Feldman Group Defendants. Plaintiff will also serve Mr. Feldman's attorney, Mr. Moon.

    4. <u>Venue</u>. Venue is proper in this district and division because Defendant Feldman resides here and works here.

## II. <u>Grounds for Relief</u>.

    5. <u>Fraud Defined</u>. Fraud is not defined in Bankruptcy Code Sec. 101. <u>Black's Law Dictionary</u> (4th Ed. 1951) defines it as "An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing or give up a legal

right; a false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury."

6. <u>Elements of Fraud</u>. Fraud can be found where there are misrepresentations, or merely silence coupled with a duty to speak. Where the former type is alleged, "The elements of fraud are a material misrepresentation, that was false, that was known to be false when made or else asserted without knowledge of the truth, that was intended to be acted upon, that was relied upon, and that caused injury." <u>Johnson & Johnson Medical, Inc. v. Sanchez</u>, 924 S.W.2d 925, 929-30 (Tex. 1996). *See also*, <u>Custom Lsg., Inc. v. Texas Bk. & Tr. Co. of Dallas</u>, 516 S.W.2d 138 (Tex. 1974). Where the fraud alleged is silence, then the first three elements above are replaced by the elements of a duty to speak, and of a failure to speak; and the last two elements of reliance and injury remain unchanged. *See e.g.*, <u>Phillips Petroleum Co. v. Daniel Motor Co.</u>, 149 S.W.2d 929 (Tex. Civ. App. 1941, error dismissed, judgment correct), relying on Sec. 551 of the <u>Restatement of Torts</u>. That is the kind of fraud which exists here.

7. <u>Plan Created Duty to Disclose</u>. While Plaintiff was serving as plan trustee, Defendant had an obligation to disclose certain things under the Plan, Exhibit B. Fraud may consist in a false statement made with intent to deceive, or it may consist in failing to make a disclosure which one is legally obligated to make. In this case Defendant committed fraud because he failed to make disclosures which Exhibits B & C gave him a legal obligation to make to Plaintiff. (He also committed fraud by intentionally representing that he would make disclosures later when he had no intention of doing so.) Although a

bankruptcy debtor gives up his right to a great deal of privacy, Defendant Feldman's plan expressly required him to make additional disclosures beyond what ordinary bankruptcy debtors always owe. These additional disclosures were the checks and tax returns of himself, and the Feldman Group entities described in Exhibit B; and also the back-up receipts and documentation for expenditures for the 51% of the funds which the bankruptcy estate had a right to but which Mr. Feldman himself personally administered and never turned over to the plan trustee; for the five years beginning January 1 after the confirmation of the plan shown as Exhibit B. These writings would have proven additional sums due from Defendant to the bankruptcy estate and allowed Plaintiff to recover what Defendant actually owed the estate, enabling Plaintiff to receive additional attorneys fees. In reliance that Defendant would make the disclosures due, Plaintiff did his work, and expended time and earned attorneys fees (that he could have expended and earned in other cases, making money which he has not yet received in the case involving Exhibits A, B & C). Plaintiff previously had filed an adversary proceeding on behalf of the bankruptcy estate, in which he sought for the bankruptcy estate its funds, which the disclosures would have established were due, see Exhibit E, R2247-2330. But this suit is not brought to recover for damages to the estate, but for the harm done to Plaintiff individually.

8. <u>Intent to Commit Fraud Continues</u>. When Plaintiff was Plan Trustee, he was able to determine that Defendant could be sued for a lot of money, perhaps close to a million dollars, under a theory of reliance damages – the value of what the estate gave up in making the deal to get the promise of five years of income which Defendant refused to carry out. See Exhibit F, the Proposed Final Report, R0552-R1386, and the Second

Amended Proposed Final Report, R1530-1978, both incorporated by reference, and the first 70 pages of which is attached. A little later, Plaintiff got some more tax returns and was able to see that $1 million could be claimed on an expectation theory as well. See Exhibit E, the Adversary Complaint filed by Plaintiff on behalf of the bankruptcy estate against Defendant. However, the replacement plan trustee has decided that he will sell out these $1 million assets for $25,000 cash, in effect (and apparent intent) an attempt to moot the appeal before Judge Tagle by leaving no funds in the estate to pay Plaintiff if Plaintiff wins. The motion to take $25,000 for assets on which a motion for summary judgment for $1 million would lie is Exhibit H, filed by Mike Schmidt & John Vardeman, attorneys for the replacement plan trustee, Mike Boudloche. Exhibit H is the only exhibit which is not currently a part of the record on appeal, which record Plaintiff incorporates by reference.

  A. <u>Should Have Waited</u>. If Judge Tagle sustains the appeal, it will clearly be wrong for the Defendant to get away with paying only $25,000; when the additional amounts unpaid to Plaintiff are already into the six figures. The premise of Exhibit H is that Plaintiff will lose the appeal; the deal otherwise makes no sense -- the motion claims that this money is reserved to pay the new trustee's fees. So unless the district court is going to deny the appeal, the premise of the settlement is not supportable.[2] But why is it the job of

---

[2] But there is no point in going forward now, without waiting for the district court's decision, unless they are afraid they will not win. If they lose in the district court, they know Mr. Feldman cannot be sent home scot-free and owing nothing. So they need this motion. If they win on appeal, Mr. Kaufman does not get paid, so they can send Mr. Feldman home; without the need to push through the motion now. So the timing is revealing, and shows an agenda to give Mr. Feldman assurance that he won't have to pay anything significant anyway, even if the appeal is successful, and Mr. Feldman owes to pay money.

the bankruptcy court to decide for itself, in advance, what the appellate court is going to decide itself in a month or two? Why is it not the duty of the bankruptcy judge to defer to the higher court, and let it make its decisions unpressured by events under the control of the bankruptcy judge? It is not the bankruptcy court's job to rush up the district court. If the district court needs rushing up (not Plaintiff's contention), that is the job of the Fifth Circuit Court of Appeals or the judicial conference, not the proper concern of the lower court.

      B. <u>Not Well Supported</u>. Furthermore, the briefs do not support the view that the replacement plan trustee is asking the bankruptcy court to accept. This Court has before it, Exhibits I & J, the Plaintiff's Original Brief on appeal and Reply Brief, respectively, in the related cases before Judge Tagle, cases Civil #B-02-073 and 02-074, which briefs are both incorporated by reference, and demonstrate that one should not accept that the replacement plan trustee has any good reason to believe that Plaintiff was entitled to nothing.

      C. <u>Civil Conspiracy</u>. A deal to deprive a third party of money which he or she owns or is owed is a civil conspiracy to commit fraud, even if one conspirator is a lawyer. *See e.g.*, <u>Bernstein v. Portland Sav. & Loan Assn.</u>, 850 S.W.2d 694, 702 (Tex. App. Corpus Christi 1993, no writ), following <u>Likover v. Sunflower, II, Ltd.</u>, 696 S.W.2d 468 (Tex. App. Houston 1st 1985, no writ) for the rule that an attorney can be liable for "taking fraudulent action on behalf of a client or advising fraudulent action by a client." *Cf.*, <u>Bourland v. State</u>, 528 S.W.2d 350 (Tex. Civ. App. Austin 1975) (attorney's actions assisting client to set up a fraud were a "civil conspiracy" to "engage in false, misleading or deceptive acts" creating

Texas Deceptive Trade Practices Act liability or lawyer's part); <u>McElhanon v. Hing</u>, 151 Az. 403, 728 P.2d 273 (1986), cert denied, ___ U.S. ___, 87 S.Ct. 1956, ___ L.Ed.2d ___ (1987) (attorney guilty of civil conspiracy when he assists client to make a fraudulent conveyance). The only different wrinkle here is that the parties civilly agreeing not to let Mr. Kaufman be paid any money are taking it before a bankruptcy judge, and asking that bankruptcy judge to agree that the bankruptcy judge's prior appealed decision was right, and no appellate court could possibly reverse it. A deal for Mr. Kaufman not to be paid even if he wins the appeal is fraudulent, because it is intended to deprive him of money to which he will have an adjudicated legal right. So it is an illegal deal and an act of fraud to begin with. A bankruptcy debtor does not have a right of discharge without paying the administrative expenses in Chapter 11 cases; the parties making the civil agreement are trying to evade that statutory mandate.

9. <u>Receipt of the Benefits of Fraud</u>. Under such cases as <u>Deitrick v. Greenberg</u>, 15 F. Supp. 290 (D Mass. 1936) and <u>International Life Insurance Co. v. Herbert</u>, 334 S.W. 2d 525 (Tex. Civ. App. Waco 1960, no writ), a person or entity may be liable, who did not itself commit a complained of fraud, but who received the benefits of that fraud. In this case, the fraud of Defendant Feldman was committed to keep the Feldman Group Defendants from having to pay out money to the bankruptcy estate. The amounts which the Feldman Group Defendants were enabled to retain for their own uses, and not pay out, was well into the six figures, and in excess of the expectation damages caused by Defendant Feldman. Accordingly, having benefitted to an extent in excess of Plaintiff's claim; the Feldman Group Defendants owe to pay back Plaintiff for the harms to him to the extent of any benefit that

each of them has received from Defendant Feldman's machinations.

7. <u>What Are the Damages</u>. The amount of attorneys fees Plaintiff earned but was not paid in the case approached the sum of $200,000, and with interest exceeded that sum, even before the work was done on the appeal; and Defendant owes at least that much for actual reliance and expectation damages, plus harm to his reputation and his mental anguish damages, plus punitive damages in an amount to be fixed by the court, but which Plaintiff suggests ought to be treble the actual damages. Also Plaintiff should recover incidental damages, including prejudgment and post-judgment interest, and costs of suit.

8. <u>When Damage Occurred</u>. The damage which Plaintiff received from this fraud was incurred subsequent to the plan term, and no sooner than summer of 2001, when Plaintiff's fees were denied by the bankruptcy court. Although an appeal of that denial is pending in this court before Hon. Hilda Tagle, in Civil Case # B-02-073; Defendant has not ceased his machinations, and has attempted to moot any decision by Judge Tagle by making the motion to compromise and settle attached hereto as Exhibit H. Although Plaintiff had investigated. to the extent possible, how the Defendant owed the $1 million and could be made to answer on summary judgment, Defendant and the replacement trustee do not propose to make a summary judgment motion. Instead, this "Motion for Approval of Compromise and Settlement Agreement proposes to settle out the $1 million owed by Defendant Feldman and his family and associated entities, by the payment of $25,000 (thereby making the estate unable to pay the cerca $200,000 owed Plaintiff in the event of success on appeal). However, Exhibit H cannot lawfully eliminate Defendant's individual liability to Plaintiff personally.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully asks that citation be issued, and the Defendant Feldman and the Feldman Group Defendants be served, and cited to appear herein; and that upon final hearing herein, the Court find that fraud was committed by Defendant Feldman, and that the Feldman Group Defendants benefitted from it by not paying out funds; and that Plaintiff recover his expectation and reliance and incidental damages, including pre-judgment and post-judgment interest, and his damages for loss of reputation and mental anguish, and costs of suit, and that judgment be entered against Defendant Feldman for all Plaintiff's claims, and that judgment be entered against the Feldman Group Defendants for such parts of Plaintiffs claims as they might have been unjustly enriched because of keeping funds that otherwise would have been paid out to the bankruptcy estate and to Mr. Kaufman; and that Plaintiff have such other and further relief as may be fair or just.

Respectfully submitted,

*[signature]*

Colin Kelly Kaufman, in propria personam
State Bar of Texas # 11113000
Southern District Federal ID # 9242

Colin Kelly Kaufman, Attorney at Law
1106 Third Street 78404-2312
PO Box 1662
Corpus Christi, TX. 78403-1662

Telephone (361) 888-8865
Telecopier (361) 888-8172

Bd. Certified, Business & Consumer Bankruptcy Law, Texas Board of Legal Specialization

Certificate of Service: None – this writing is to be served by the issuance and service of

citation (i.e., a summons).

# **EXHIBIT LIST**
for
Plaintiff's Original Complaint
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

1. Civil Cover Sheet
2. Plaintiff's Original Complaint
A. Plan of Reorganization of Charles B. Feldman D/B/A Charles B. Feldman Investments
B. First Amended Plan of Reorganization of Charles B. Feldman D/B/A Charles B. Feldman Investments
C. Order Confirming First Amended Plan of Reorganization of Charles B. Feldman D/B/A Charles B. Feldman Investments
D. No Exhibit for D
E. Adversary Proceeding
F. Plan Trustee's Proposed Final Report
G. No Exhibit for G
H. Motion for Approval of Compromise and to Approve Settlement Agreement
I. Original Brief on Appeal of Docket Numbers 469 & 470 of Appellant Colin Kelly Kaufman
J. Reply Brief on Appeal of Docket Numbers 469 & 470 of Appellant Colin Kelly Kaufman
K. Colin Kelly Kaufman's Response to Mike Boudloche's Motion to Compromise and Settle Claims